UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHEN BARTON,<br><br>                    Plaintiff,<br><br>        v.<br><br>WALMART INC., JOHN DOE 1-10,<br><br>                    Defendants. | CASE NO. 23-5063 DGE-RJB<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE |

This matter comes before the Court on the Plaintiff's Motion for Summary Judgment on Plaintiff's Claims (Dkt. 72), Defendant Walmart Inc.'s ("Walmart") Motion for Summary Judgment (Dkt. 75), Walmart's motions to strike (Dkts. 82 and 87), and Plaintiff's motions to strike (Dkts. 77, 84 and 89).  The Court has considered the pleadings filed regarding the motions and remaining file and is fully advised.  Oral argument has been requested but is unnecessary to decide the motions.

The Plaintiff, *pro se,* brings this case alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.,* ("TCPA") and Washington's Consumer Electronic

Mail Act, RCW 19.190, *et. seq.,* ("CEMA") in connection with text messages made to a mobile phone number (***)***-1019. Dkt. 12. He seeks damages, including treble damages, and injunctive relief. *Id.* This is one of dozens of TCPA cases the Plaintiff has filed with varying success. *See e.g. Barton v. LeadPoint Inc., et al.*, No. 3:21-cv-05372-BHS (W.D. Wash.); *Barton v. DirecTV LLC,* No. 3:21-cv-05423-BHS (W.D. Wash.); *Barton v. Asset Realty LLC*, et al., No. 3:21-cv-05462-RJB (W.D. Wash.); *Barton v. The Rian Group Inc., et al.*, No. 3:21-cv-05485-BHS (W.D. Wash.); *Barton v. JMS Associate Marketing LLC*, et al., No. 3:21-cv-05509-RJB (W.D. Wash.); *Barton v. Delfgauw, et al.*, No. 3:21-cv-05610-JRC (W.D. Wash.); *Barton v. LendingPoint LLC, et al.*, No. 3:21-cv-05635-BHS (W.D. Wash.); *Barton v. American Protection Plans LLC*, No. 3:21-cv-05669-BHS (W.D. Wash.); *Barton v. SelectQuote Insurance Services*, No. 3:21-cv-05817-BHS (W.D. Wash.); *Barton v. America's Lift Chairs LLC et al.*, No. 3:21-cv-05850-BHS (W.D. Wash.); *Barton v. Sopi Financial LLC*, et al., No. 3:21-cv-05934-RJB (W.D. Wash.); *Barton v. Allstate Insurance Company*, et. al., No. 3:22-cv-5260-JRC; and *Barton v. Litigation Practice Group PC, et al.*, 3:22-cv-05483-TLF. He has also filed cases in other U.S. District Courts (*See e.g. Barton c. Associated Credit and Collection Bureau Inc.*, No. 3:05-cv-00251 (N.D. Texas)).

In any event, in this case, both parties move to strike portions of various pleadings (Dkts. 77, 82, 84, 87 and 89) and move for summary judgment (Dkts. 72 and 75). The Plaintiff's motions to strike should be denied (Dkt. 77) and stricken as moot (Dkts. 84 and 89). Walmart's motions to strike should be granted, in part, and stricken as moot, in part, (Dkt. 82) and stricken as moot (Dkt. 87). Further, because the undisputed facts show that Walmart did not send the Plaintiff **"telephone solicitation"** or **"commercial text messages**," but messages regarding orders placed by another customer, Walmart's motion for summary judgment (Dkt. 75) should

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE - 2

be granted, the Plaintiff's motion for summary judgment (Dkt. 72) denied, and the case dismissed.

## I. FACTS AND PROCEDURAL HISTORY

According to Walmart, it gives customers who order online or through its mobile phone application ("app") the option to receive real-time text message updates about pending orders. Dkt. 76-1 at 2. In addition to when they open their accounts, customers are given an additional opportunity to opt to receive text messages about each individual order when they place the order. *Id.* During the checkout process, on the "Review Order" page, the customer is presented with a checked box and the language "I want to receive text updates about the status of my order." *Id.* The customer can uncheck the box. *Id.* Near the checked box is a space that includes the phone number that is associated with the customer's account or address; these are provided by the customer when an account is opened or when a customer updates their contact information. *Id.* at 2-3. If a customer indicates that they want text message updates sent regarding their orders, Walmart typically sends five categories of messages when they apply: (1) order is ready for pickup, (2) order is shipped, delayed, out for delivery, or delivered, (3) some ordered items are unavailable, (4) substitutions for ordered items are possible for unavailable items, and (5) order has been canceled. Dkt. 76-1 at 3-5. These text updates are connected to specific orders. *Id.* at 3.

In 2012, I.M. acquired a mobile phone which was assigned the number ending in 1019, the phone number that is the subject of this lawsuit. Dkt. 76-2 at 6. (I.M. is not a party to this lawsuit and the parties have agreed to use her initials to protect her privacy. Dkts. 72 and 76.) Around 2018 when she still had the phone number ending 1019, I.M. opened an online account

1  with Walmart to order groceries.  Dkt. 76-2 at 6-7 and 16.  When she opened the online account,
2  she checked the box that she wanted text messages sent to her phone about her orders.  *Id.* at 14.
3      I.M. uses the Walmart app on her mobile phone to place orders with Walmart and then she or
4  her husband pick the orders up or the orders are delivered to her home.  Dkts. 76-2 at 7; 12 at 18.
5  I.M. acknowledges that when she places her orders on her app, a portion of the order process
6  includes a check box that appears that says, "I want to receive text updates about my order."  *Id.*
7  at 13.  She states she doesn't pay attention to the number listed by the checked box.  *Id.*  I.M.
8  acknowledges that she "never really paid attention" to the part of the order form asking about
9  whether she wanted text messages about her order because Walmart always sent her an email
10 about the order as well.  *Id.* at 14.
11     I.M. states that she likes receiving updates from Walmart about her orders while they are in
12 process – for example, if an item is unavailable, or if the order is ready early.  Dkt. 76-2 at 20.
13 She also finds it helpful when Walmart notifies her of possible substitutions to consider when an
14 item is unavailable.  *Id*.  Customers can designate in their account, or at the time of purchase,
15 whether they want Walmart to automatically substitute items (when an ordered like item is
16 unavailable).  Dkt. 83-1 at 2.
17     I.M. kept that phone number ending in 1019 until January of 2020.  Dkt. 76-2 at 6.  Her ex-
18 husband canceled the phone line, at which time she "lost access to [the phone number]." Dkt. 76-
19 2 at 6 and 76-8 at 9.  In July of 2020, when the Plaintiff bought an additional mobile phone (he
20 owns several phones), the phone company reassigned the number ending in 1019 to the Plaintiff.
21 Dkt. 83-4 at 6.  Plaintiff registered the number at issue here on the national do-not-call list on
22 February 16, 2021.  Dkt. 73 at 2.  I.M. did not immediately change her phone number in her
23 Walmart account, so as she directed in her account settings, text messages about her orders
24

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE - 4

continued to go to the number ending in 1019, even after the number was reassigned to Plaintiff by the phone company.  Dkt. 76-2 at 13.

The Plaintiff contends that from September 3, 2022 through February 2, 2023, Walmart sent approximately 90 text messages to the number ending in 1019 regarding I.M.'s orders.  Dkts. 12 and 72 at 26 n.73 (This lawsuit doesn't include texts past February 2, 2023).  It is unclear when I.M. changed the number listed in her Walmart account so that the Plaintiff would no longer receive text messages about her order.  I.M. states that now that she has updated the phone number, she receives text messages about her orders.  Dkt. 76-2 at 13.

The content of the text messages at issue are uncontested and are drawn from the Amended Complaint (Dkt. 12).  Those text messages - some of which were sent multiple times - provided:

- A September 3, 2022 message that read: "Walmart: Part of your order is ready for curbside pickup until Sat, Sep 03. Check in before you go: https://w-mt.co/g/3908R1 Reply HELP for info; STOP to opt out."  Dkt. 12 at 19.

- A September 3, 2022 message that read: "As requested, we've canceled your Walmart order. View updated order details: https://w-mt.co/g/391Zfv Reply HELP for info; STOP to opt out."  Dkt. 12 at 19.

- An October 22, 2022 message that read: "Sorry, some items in your Walmart order weren't available. Review your order: https://w-mt.co/g/4GXMnv Reply HELP for help; STOP to opt out."  Dkt. 12 at 9.

- An October 29, 2022 message that read: "Your Walmart order has substitutions. Anything you don't want? Please let us know soon: https://w-mt.co/g/4KyLN4 Reply HELP for info; STOP to opt out."  Dkt. 12 at 9.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE - 5

- A November 16, 2022 message that read: "Some items may be low in stock. Pick substitution preferences for your upcoming Walmart order: https://w-mt.co/g/4NidiA." Dkt. 12 at 11.

- A December 21, 2022 message that read: "Your Walmart order was delivered. Thanks for shopping with us! Reply HELP for info; STOP to opt out." Dkt. 12 at 21.

- A December 24, 2022 message that read: "Great news, [I.M.]! Your Walmart package is out for delivery and should arrive today. Track: https://w-mt.co/g/5rcVub Reply HELP for info; STOP to opt out." Dkt. 12 at 18.

- A December 27, 2022 message that read: "We're sorry, some items in your Walmart order were out of stock, so we had to cancel. View details: https://w-mt.co/g/5sGEcP Reply HELP for info; STOP to opt out." Dkt. 12 at 19.

- A January 28, 2023 message that read: "Your Walmart curbside pickup is ready. Check in before you leave, so we know you're on the way: https://w-mt.co/g/5zHyUX Reply HELP for info; STOP to stop." Dkt. 12 at 24.

Aside from Walmart's response when the Plaintiff texted "STOP," which is addressed in the following paragraph, the Plaintiff fails to point to any other language in the text messages from Walmart on which he is basing his claims.

According to Walmart, customers have the option to stop receiving text message updates about an order anytime by replying "STOP" to the message. Dkt. 76-1 at 8. If the customer replies "STOP," Walmart sends a message that indicates that they will "no longer receive m[essages] about [their] **order**." *Id.* at 3 (*emphasis added*). No further text messages are sent for any future order unless the customer indicates that they want text message updates about that order at the time of purchase. *Id.* The Plaintiff states that on three occasions (Sept. 15, 2022;

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE - 6

October 19, 2022; and November 26, 2022), he texted "STOP" in response to the text messages Walmart was sending I.M. related to her orders. Dkt. 76-3 at 168. I.M. continued to order from Walmart, generally leaving the box checked that indicated she wanted order update text messages sent to the phone number ending in 1019. Dkt. 76-2 at 8-13.

Although he knew who I.M. was and had her contact information because of other TCPA cases[1] he filed involving the number ending in 1019, the Plaintiff did not inform I.M. that he was getting text messages that were meant for her from Walmart about her orders. Dkt. 76-3 at 170. He also did not block the two short codes Walmart used to send the messages. *Id.* at 261-263. The Plaintiff did not call Walmart to get it to stop until December of 2023 - well after this litigation began. Dkt. 73-12 at 3. Instead, on January 2, 2023, the Plaintiff filed this case in Clark County Washington Superior Court, serving Walmart with a copy of the complaint on January 4, 2023. Dkt. 1. The case was removed to this Court on January 24, 2023. *Id.* The Plaintiff contends that Walmart sent 15 additional texts after receipt of the complaint. Dkt. 72.

The parties now file cross motions for summary judgment and several motions to strike. The motions to strike should be considered first and then the motions for summary judgment.

## II. DISCUSSION

### A. MOTIONS TO STRIKE

#### 1. Walmart's Motions to Strike

In its response to the Plaintiff's motion for summary judgment, Walmart moves to strike references in Plaintiff's motion for summary judgment (Dkt. 72 at 9-10), Plaintiff's declaration (Dkt. 73 at 5-6), and screenshots of emails from Walmart (Dkts. 73-4 and 73-5) related to two phone calls the Plaintiff personally made to Walmart's 1-800 number. Dkt. 82. The Plaintiff

---

[1] According to the Plaintiff, since early 2021, he has filed around 40 TCPA lawsuits. Dkt. 76-3 at 233.

purportedly recorded the calls and posted the calls on YouTube sometime in December 2023. Dkt. 73 at 5-6.  Walmart also asks the Court to strike references in Plaintiff's motion for summary judgment (Dkt. 72 at 10-17) and Plaintiff's declaration (Dkt. 73 at 4) wherein the Plaintiff discusses YouTube videos the Plaintiff allegedly made in December of 2022.  Dkt. 82. Walmart also asks the Court to strike exhibits attached to the Plaintiff's motion for summary judgment that appear to be FaceBook screenshots of children (Dkts. 73-13 - 74-15) and an Amazon order for a watch (Dkt. 73-18).  *Id.*

Walmart's motion to strike the references to the YouTube recordings (Dkt. 82) should be granted.  The actual content of the conversations is not in the record.  Evidence outside the record is not considered on summary judgment. Fed. R. Civ. P. 56 ("a party asserting that a fact . . . is genuinely disputed must support that assertion by . . . citing to particular parts of the **record**").  The Court is not obligated to go to YouTube to add to the record.  Even if it were, these recordings appear to be irrelevant to the key issue in the pending motions.  They do not relate to whether the text messages were "telephone solicitations" or "commercial text messages" under the TCPA or CEMA, respectively.

Walmart's motion to strike the screenshots of children on FaceBook and the Amazon order (Dkt. 82) should be stricken as moot.  While the evidence is of questionable relevance, it was proffered in connection with issues unrelated to the critical question in deciding the summary judgment motions.

In its Surreply, Walmart moves to strike portions of the Plaintiff's reply to Walmart's response to Plaintiff's motion for summary judgment (Dkt. 84) and portions of the Plaintiff's declaration offered in support of his reply (Dkt. 85) related to whether the number ending in 1019 is "residential." Dkt. 87.  Walmart also moves to strike portions of the Plaintiff's reply to

Walmart's response to Plaintiff's motion for summary judgment (Dkt. 84) related to whether the Plaintiff has standing. *Id.*

Walmart's motion (Dkt. 87) should be stricken as moot. The Court need not reach the issue of whether the phone number is "residential" to decide the motions for summary judgment. Further, Walmart did not raise standing issues and the Court need not reach the question because the motions for summary judgment can be decided on other grounds. The Court need not reach Walmart's additional arguments regarding whether Plaintiff's reply to Walmart's response to Plaintiff's motion for summary judgment (Dkt. 84) was over the word limit, whether his reply (Dkt. 84) contained new evidence, and whether Walmart's surreply (Dkt. 87) was timely.

2. <u>Plaintiff's Motions to Strike</u>

In his response to Walmart's motion for summary judgment, the Plaintiff moves to strike portions of Walmart's motion "implying [he] had a duty to mitigate damages," implying that I.M. could consent to the text messages, that I.M. found text messages about her orders helpful, and portions of the Plaintiff's wife's deposition on what she considered telemarketing. Dkt. 77.

Plaintiff's motion to strike (Dkt. 77) should be denied. The Plaintiff provides no legal basis to support his motion. Moreover, these facts are largely background facts and provide context for what happened. They help explain why Walmart continued to send order updates after the Plaintiff texted "STOP" in response to three orders. In any event, these facts are of marginal help in deciding the key question in the motions for summary judgment – whether the text messages meet the TCPA and CEMA's statutory definitions of prohibited texts.

In his reply to Walmart's response to the Plaintiff's motion for summary judgment, the Plaintiff moves to strike his ex-wife's declaration (Dkt. 83-2), which was offered related to whether the number ending in 1019 was truly a "residential" number as required under the

relevant statutes, an alleged transcript of the Plaintiff being interviewed by National Public Radio about his TCPA litigation (Dkt. 83-3), a list alleged to be of the number of times the Plaintiff and his wife visited Walmart (Dkt. 83-12), and several Walmart receipts alleged to be from Plaintiff's credit card (Dkt. 83-13) and portions of Walmart's response to the Plaintiff's motion for summary judgment that referred to those materials (Dkt. 82). Dkt. 84.

The Plaintiff's motion to strike (Dkt. 84) should be stricken as moot. This evidence was offered to point to disputed facts on a separate element of Plaintiff's claims – whether the phone number was "residential" - and on whether Walmart had a viable affirmative defense of "established business relationship." The Court need not reach the issue of whether the phone number was "residential" or if Walmart made a sufficient showing on its affirmative defense because the motions for summary judgment can be decided based on different issues.

In response to Walmart's motion to strike, which was in Walmart's Surreply (Dkt. 87), the Plaintiff filed "Plaintiff's Motion to Strike Portions of Dkt. 87." Dkt. 89. As stated above in Section II.A.1., Walmart's motion to strike (Dkt. 87) should be denied as moot. Accordingly, Plaintiff's motion to strike Walmart's Surreply (Dkt. 89) should be denied as moot.

B. **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

      The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, which is a preponderance of the evidence in most civil cases. *Anderson,* 477 U.S. at 254; *T.W. Elect.* at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect.* at 630. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888–89 (1990).

### C. FEDERAL LAW CLAIM: TCPA CLAIM

The Plaintiff asserts a TCPA claim under 47 U.S.C. § 227(c) and its implementing regulation, 47 C.F.R. § 64.1200. Dkt. 12. Walmart argues that the Plaintiff's TCPA claim should be dismissed because the text messages at issue were not "telephone solicitations," as required under the TCPA, but were updates to orders.

Section 227(c) of the TCPA directs the Federal Communication Commission to "promulgate regulations under which 'residential subscribers' may request that their telephone numbers be

included in a national do-not-call registry and database, and to prohibit telephone solicitation to 'any subscriber included in such database.'" *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022)(*quoting* 47 U.S.C. § 227(c)(3)(F)). Pursuant to § 227(c) of the TCPA's implementing regulation, 47 C.F.R. § 64.1200(c)(2), "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ."

Both the TCPA § 227 and its implementing regulation 47 C.F.R. § 64.1200, define "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase . . . of . . . goods, or services, which is transmitted to any person . . . ." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). To determine whether the **purpose** of the text messages at issue here were to "encourag[e] the purchase . . . of . . . goods, or services," and thus were "telephone solicitations" under § 227(c) and its regulations, courts in the Ninth Circuit consider the content and context of the communications "with a measure of common sense." *See Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012); *An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257 (N.D. Cal 2018), *aff'd* 798 Fed. App'x 157 (9th Cir. 2020).

      1. **<u>Content</u>** of Messages Demonstrates Texts Were Not Solicitations

Applying that "measure of common sense" here, the Plaintiff fails to point to issues of fact that the content of any of the text messages was to "encourag[e] the purchase . . . of . . . goods or services." Walmart convincingly argues that the text messages were sent to facilitate fulfillment of its customer's previously placed orders and were informative only.

For example, Walmart sent messages that orders were ready for pick up: " . . . Walmart: Part of your order is ready for curbside pickup until Sat, Sep 03. . . ." Dkt. 12 at 19. Walmart sent text messages regarding I.M.'s orders' delivery status: "Great news, [I.M.]! Your Walmart

package is out for delivery and should arrive today. . ." *Id.* at 18.  As requested by I.M., Walmart sent text message updates that some items she ordered were unavailable: "Sorry, some items in your Walmart order weren't available. Review your order: https://w-mt.co/g/4GXMnv . . ." *Id.* at 9.

When items she ordered were unavailable or low in stock, Walmart offered her the opportunity to approve or decline substitutions or change her account's substitution preferences: "[y]our Walmart order has substitutions. Anything you don't want? Please let us know soon: https://w-mt.co/g/4KyLN4 . . ." and "[s]ome items may be low in stock. Pick substitution preferences for your upcoming Walmart order: https://w-mt.co/g/4NidiA . . ." Dkt. 12 at 9, 11.  (According to Walmart, the website links were to I.M.'s account; the Plaintiff did not have I.M.'s permission to access the account, so the link took him to the general Walmart webpage. Dkt. 83-1 at 3.)  The Plaintiff argues that inclusion of this link makes the text message a commercial one. Dkt. 72.  Contrary to the Plaintiff's assertions, a link to a company's website, without more, does not render a text message from that company a "telephone solicitation."  *An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257 (N.D. Cal 2018), *aff'd* 798 Fed. App'x 157 (9th Cir. 2020); *Vallianos v. Schultz*, 2019 WL 4980649 at *3 (W.D. Wash. Oct. 8, 2019)("the mere inclusion of a link to a website on which a consumer can purchase a product does not transform the whole communication into a solicitation").  While the Plaintiff argues that the text messages offering substitutions "offer goods and services," he fails to consider that customers select their substitution preferences at the time the order is placed (either the customer preselects substitutions, selects no substitutions, or asks Walmart to select them).  Dkt. 76-1 at 4-5.

Further, Walmart sent text messages when I.M. canceled her order:  "As requested, we've canceled your Walmart or-der. . ." Dkt. 12 at 19.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE - 13

Nothing in the content of these messages could reasonably be construed as an encouragement to the Plaintiff to purchase goods.  They serve to merely inform I.M. that the order she placed was ready for pick up, was out for delivery/has been delivered, certain items were unavailable, substitutes for unavailable items were possible (she could adjust how substitutions were handled on her account), or the order was canceled.  While the Plaintiff contends that because Walmart is a for-profit entity and all actions it takes are at least tangentially driven by its profit motive (including any text messages it sends)(Dkts. 72 and 77), informational text messages, for example, merely confirming commercial transactions which have been made, are not "telephone solicitations" violative of the TCPA.  *See An Phan* at 1262; *Moskowitz v. Am. Sav. Bank, F.S.B.*, 2020 WL 61576, at *3 (D. Haw. Jan. 6, 2020), aff'd, 37 F.4th 538 (9th Cir. 2022).

2.  **Context** of Messages Demonstrates Texts were not Solicitations

Applying a "measure of common sense" here, the Plaintiff has also failed to show that the context in which the text messages were sent could reasonably be construed as an encouragement to purchase goods or services from Walmart.  The messages were sent after I.M. placed the orders and related to ongoing business transactions.  After the order was filled or canceled no additional messages were sent about the order.  New messages were only sent if I.M. placed a new order.  There is no evidence that they were sent to entice the Plaintiff to purchase anything.

The Plaintiff points to an out of circuit case, *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC,* 80 F.4th 466 (4th Cir. 2023), and argues that the context of the texts here – messages from for-profit entities, means that their communications were commercial in nature. Dkt. 77.  The Plaintiff again asserts that as a for profit entity, everything Walmart does is for profit.  *Id.  Carlton* is distinguishable.

In *Carlton*, the defendant sent an unsolicited fax to the plaintiff chiropractic clinic, offering a free digital book containing information about prescription drugs. 80 F.4th at 470. Drug companies paid the defendant to include their products in the eBook. *Id.* The fax included a pitch about the "virtues and quality" of the eBook. *Id.* The *Carlton* court found that the fax constituted an "unsolicited advertisement" because the fax was "commercial in nature," even though the eBooks were offered for free. *Id.* at 472-474. The court explained that its conclusion flowed "from the everyday understanding of the term 'advertise.' 'Advertise' customarily has a distinctly commercial flavor, invoking a business solicitation, designed to attract clients or customers and in the hopes to make a profit, directly or indirectly." *Id*. at 472-73.

Unlike in *Carlton,* the text messages sent here were about orders which had already been made – they were about ongoing or completed transactions. The text messages here did not include a "pitch" to purchase goods. The faxes in *Carlton* were sent with the hope that future transactions (the prescription and purchase of drugs listed in the eBook) would occur. The text messages here were merely about already-made order fulfillment and not about possible future purchases. Further, *Carlton* addresses the TCPA's provision on "advertisement," which is defined separately under the regulation as "any material advertising the commercial availability or quality of any property, goods, or services . . . ." at § 64.1200(f)(1). This definition is broader then the definition of "telephone solicitation" found at § 64.1200(f)(15). *Carlton* is inapplicable.

The Plaintiff argues that the timing of when Walmart charges the customer (at the time of the order if purchased with a gift card or electronic benefits transfer card or at the time of pickup/delivery if purchased by debt card or credit card) makes at least some of these purchases "future purchases." Dkt. 72. This argument is without merit. In this case, text messages were sent when I.M. completed her order, when funds were transferred is immaterial.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE - 15

The Plaintiff's contention, that any unsolicited communication from a for-profit entity has a "commercial nexus" and so is a "telephone solicitation," would improperly broaden the scope of the TCPA's definition of "telephone solicitation." Walmart's general goal to make a profit is "simply too attenuated" to give rise to the implication that its purpose in sending the text messages about I.M.'s orders was to coax the Plaintiff into making future purchases. *See Smith v. Blue Shield of California Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1067 (C.D. Cal. 2017). "Were this Court to hold otherwise, it would transform practically all communication from any entity that is financially motivated and exchanges goods or services for money" into "telephone solicitation," which "would contravene the delineated definitions of that term" in 47 C.F.R. § 64.1200(f)(15). *Id.* at 1068.

The Plaintiff maintains that the cases Walmart cites don't apply because the parties in those cases consented to be contacted (either called or texted). Dkt. 77. He points out that I.M. could not consent for him to be called. *Id.*

Walmart properly notes that whether the Plaintiff consented to the text messages is immaterial to whether the text messages met the TCPA's statutory requirement that the text messages constituted "telephone solicitation" - that they were sent for "the purpose of encouraging the purchase . . . of . . . goods, or services . . . ." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). Consent to receive the text messages is a separate defense, *See* 47 U.S.C. § 227(a)(4)(A), and Walmart does not assert it here.

The Plaintiff contends that he sent Walmart a "STOP" request and it continued to send him text messages. Dkt. 77. He argues that the text messages did not specify that the "STOP" request was merely about the single order. *Id.* The Plaintiff then makes a poor attempt at analogizing his texting a four-letter response of "STOP" to a retailer sending him messages about

someone else's order with the sexual assault of a woman.  *Id.*  This comparison is wildly inappropriate, wholly unprofessional, and entirely off the mark.

Further, Plaintiff's contention that Walmart did not specify that the "STOP" request related to a single order is belied by the record.  After the Plaintiff texted "STOP," Walmart's response provides that they will "no longer receive m[essages] about [their] order." Dkt. 76-1 at 3.  In context, these text messages are not reasonably construed to "STOP" all messages or to be encouragement to purchase goods or services ("telephone solicitations").

The Plaintiff argues that Walmart designed their order webpage so that customers would not see the portion with the pre-marked checked box indicating that they wanted text updates about orders and the phone number the customer listed.  Dkt. 77.  He fails to support this contention with evidence, and it is pure supposition on his part.  In any event, it is irrelevant to whether the context of the order updating text messages were "telephone solicitations" or not.

### 3. Conclusion on Plaintiff's TCPA claim

Applying the required "measure of common sense" here, the Plaintiff fails to point to issues of fact that either the content or context of the text messages was to "encourag[e] the purchase . . . of . . . goods or services."  Accordingly, he did not produce evidence that the text messages were "telephone solicitations," which is a required element for his TCPA claim.  His motion for summary judgment on his TCPA claim (Dkt. 72) should be denied and Walmart's motion (Dkt. 75) granted.  The Court need not reach the other grounds advanced by Walmart as to why the Plaintiff's motion for summary judgment on his TCPA claim should be denied (i.e. whether the phone number at issue was "residential" as required by the TCPA or whether the Plaintiff had an ongoing business relationship with Walmart (an affirmative defense under the TCPA)).  The Plaintiff's TCPA claim should be dismissed.

### D. STATE LAW: CEMA CLAIM

The Plaintiff asserts a claim under CEMA, citing RCW 19.190.060 (Dkt. 12) in his Amended Complaint and contends in his response to Walmart's motion for summary judgment that he is asserting a CEMA claim under RCW 19.190 "generally" (Dkt. 77). Even construing the Plaintiff's claim liberally, his CEMA claim should be dismissed.

Walmart points out that there is no private cause of action under CEMA citing *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 723-726 (2017). Dkt. 75. That is not the end of the inquiry. Instead, CEMA provides that a violation of its provisions are "unfair or deceptive act[s] in trade or commerce and an unfair method of competition for the purpose of applying the Consumer Protection Act." RCW 19.190.060(2). The Washington Supreme Court has held that a violation of RCW 19.190.060 constitutes a per se violation of Washington's Consumer Protection Act, RCW 19.86.090. *Wright* at 728-732. Accordingly, the Plaintiff's CEMA claim should be analyzed by examining the statutory language. *Id.*

Pursuant to CEMA's RCW 19.190.060(1), "[n]o person conducting business in the state may initiate . . . an electronic commercial text message" to a Washington resident's cellular telephone. As is relevant here, an electronic commercial text message is defined as "an electronic text message sent to promote . . . goods, or services for sale . . . ." RCW 19.190.010(3).

The Plaintiff has not carried his burden on summary judgment to show that there are issues of fact as to his CEMA claim. The Plaintiff has failed to point to any evidence that the text messages sent here were "commercial text messages" – that they were "sent to promote . . . goods, or services for sale . . . ." RCW 19.190.010(3). As stated above in the TCPA claim analysis, the messages were informational updates regarding orders. There is no mention of any

particular product or service; they merely contain the logistics of order purchases. Reasonably construed, the text messages in no way promoted future sales. Accordingly, there are no issues of fact; Walmart is entitled to judgment as a matter of law on the Plaintiff's CEMA claim. The Plaintiff's motion for summary judgment on his CEMA claim (Dkt. 72) should be denied, Walmart's motion on the claim (Dkt. 75) granted, and the CEMA claim should be dismissed.

### III. ORDER

It is **ORDERED** that:

- Walmart's Motion to Strike (Dkt. 82) **IS GRANTED, IN PART,** and **STRICKEN AS MOOT, IN PART**,
- Walmart's Motion to Strike (Dkt. 87) **IS STRICKEN AS MOOT,**
- Plaintiff's Motion to Strike (Dkt. 77) **IS DENIED**,
- Plaintiff's Motion to Strike (Dkt. 84) **IS STRICKEN AS MOOT**,
- Plaintiff's Motion to Strike (Dkt. 89) **IS STRICKEN AS MOOT**,
- Walmart's Motion for Summary Judgment (Dkt. 75) **IS GRANTED,**
- Plaintiff's Motion for Summary Judgment (Dkt. 72) **IS DENIED,** and
- This case **IS DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 9th day of April, 2024.

ROBERT J. BRYAN
United States District Judge